**Nationwide Mut. Ins. Co. v. Hamilton**

Case No. 89G1500
Geauga County, (11th)
Decided February 9, 1990
[Cite as 1 AOA 435]

*Atty. Terrance P. Gravens, 1630 Standard Building, Cleveland, Ohio 44113, for Plaintiff-Appellant.*

*Atty. Robert J. Olender, 1940 East Sixth Street, Cleveland, Ohio 44114, for Defendant-Appellee, Rick Hamilton,*

*Atty Thomas A. Heffernan, 1100 National City Bank Building, Cleveland, Ohio 44114, for Defendant-Appellee, Noreen K. Jones.*

*Atty. John D. Zoller, Atty. Carol M. Lamm, The Superior Building, Suite 1920, 815 Superior Avenue, N.E., Cleveland, Ohio 44114, for Defendant-Appellee, Metlife Health Care Network.*

CHRISTLEY, P.J.,

In July 1986, appellee, Rick Hamilton, participated in a golf outing at the Pleasant Hills Golf Course in Geauga County, Ohio. In driving to the course, he used his Seven-Up company car. After leaving the outing, he was involved in a accident, in which appellee Noreen Jones was injured.

Appellant, the Nationwide Mutual Insurance Company, is the insurer for the parent company of Seven-Up, Beverage Management. In September 1987, appellant filed up a declaratory judgment action in the Geauga County Court of Common Pleas against appellees Hamilton and Jones.

Beverage Management, Inc. is also known as the BMI Acquisition Corporation. In connection with the sales aspect of the business, Seven-Up employs a number of salesman known as "pre-sellers," whose purpose is to travel to retail stores in the area and solicits orders and sell promotions.

To facilitate the performance of these duties, Seven-Up provides the pre-sellers with company cars, which have the company logo on

the sides. In order to allow the pre-seller to go directly from his home to his first stop at the start of each workday, the company permits the salesman to take the car home in the evenings and on the weekends. Company policy states that the pre-sellers can use the car to run minor errands, such as stopping at the store, on the way home. However, once they are home, the pre-sellers cannot use the car again until starting their routes the next workday.

Appellee Hamilton was hired as a pre-seller in September 1985. On three different occasions during the ten months he worked for Seven-Up, appellee, Hamilton, signed three forms which explained in detail the company policy concerning the personal use of the company cars.

The history of the event in question is that in either 1981 or 1982, three company employees decided to hold a golf outing. In addition to issuing a general invitation to all local company employees, these employees also invited a number of their friends, and included individuals they had met during the course of their job, including persons from the various stores which purchased Seven-Up products.

The outing became an annual event, and was known as the "Seven-Up Golf Outing." At this peak, the outing drew approximately sixty to seventy participants, of which was provided through a flyer, which was duplicated on the company copier and posted on the premises.

On a number of these occasions, Seven-Up, along with other companies, donated a variety of prizes which were given away at the outing. Some of these items had the Seven-Up logo on them. The company also provided soft drinks for the participants. However, the company's management never authorized the event, never helped to organized the event, and never paid for any part of the event. There is no evidence that the event took place on company time. Company employees who played had to pay their own expenses.

The complaint in declaratory judgment alleged, *inter alia*, that appellee Hamilton did not have the company's permission to use the company car to go to the outing, that his use of the car was outside the company's policy on car use, and that he was not acting within the course of his employment when the accident occurred. Appellant requested the court to declare the appellee Hamilton was not an insured individual under its policy with Beverage Management, that he was not entitled to liability coverage, a defense, or

indemnification, and that it was not obligated to pay appellee Jones any monies based upon Hamilton's possible liability.

After appellees Hamilton and Jones had answered and discovery had begun, the trial court granted the motion of appellee, Metlife Health Care Network, to intervene. The matter then proceeded to trial.

In its judgment entry, the trial court held that appellee Hamilton was an insured under the insurance policy that appellant was obligated to provide him liability coverage, a defense, and indemnification, and that appellant must pay any attorney fees Hamilton incurred in this action and in any action arising out of the accident.

On appeal to this court, appellant has advanced the following assignments of error:

"1. The trial court erred in finding that Rick Hamilton was an insured when that finding was against the manifest weight of evidence.

"2. The trial court erred in finding that Rick Hamilton was an insured when the claimants of coverage presented insufficient evidence on that issue.

"3. The trial court erred in finding that Rick Hamilton was an insured when that finding was contrary to law."

Even though appellant has stated three separate assignments, its brief discusses all three at the same time. This procedure will also be followed here.

Although the appellant argues the manifest weight of the evidence in this first assignment, it is clear that he means a sufficiency of the evidence. Where there is some competent evidence going to all the essential elements of the case, the court of appeals has only a limited ability to find that a judgment is against the weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279.

We believe what the appellant is really asking is whether or not such competent, credible evidence, as presented by the appellee, Hamilton, was "sufficient" to constitute a *prima facie* case.

A review of the record indicates that of all the people who testified, including appellee Hamilton, no one ever testified that this was a company function or that they believe it to be a company function. Such an omission goes to sufficiency, not manifest weight.

That omission becomes extremely important, in light of the fact that the burden of proof that the driver had permission to use the car was upon the party which seeks to hold an insurer liable. *Spicer* v. *Oil and Gas Co. Insurance Company* (June 27, 1986), Portage App. No. 1614, unreported, citing, *Kazdan* v. *Stein* (1928), 118 Ohio st. 217, and *Marolt* v. *Lisitz* (1952), 94 Ohio App. 298.

Having established the basic standard which must be considered in reviewing this type of case, we turn to an analysis of the trial court's decision.

Appellant has presented two basic arguments. First, appellant submits that the trial court erred in not determining whether appellee Hamilton had the company's permission to drive the car to the outing. In its second argument, appellant contends that this finding is not supported by the record.

As to the first argument, appellant argues that this is the critical question to answer in determining whether Hamilton was an insured under omnibus clause of the insurance policy. In support, appellant has cited a number of cases concerning when an employee has permission to use a vehicle.

A review of the judgment entry shows that the trial court considered the permission issue and found that Hamilton's contention that he lacked knowledge of the company personal use policy to be unpersuasive. This clearly implies that the court felt Hamilton was aware of the usage restrictions. Further, the court also found that Hamilton had been "authorized" to use the car to attend company functions. Thus, appellant's arguments that the court failed to consider the permission question is meritless.

As to the second argument, we would agree that the record does not support the finding made by the court in reference to the fact that the outing was a company function, and, that Hamilton reasonably believed the golf outing was a company function.

As to the latter point, the record is void of any evidence showing that Hamilton believed this. During his testimony, Hamilton referred to a number of prior incidents in which other employees had used their company cars for personal reasons or to go to events right after work. Some of these "events" were clearly company functions. But Hamilton never stated that he felt the golf outing was a company function.

The only time Hamilton was asked as to what his belief was occurred on further direct examination by Mr. Heffernan, to-wit:

"Q. At the time you drove the company car to the golf outing and returned home, did you believe, sir, that you had the permission of the company to use the car to go to that function and come home.
"***
"A. Yes, sir. I thought I had every right in the world."

Under these circumstances, the evidence was not sufficient to warrant the finding that the company sponsored the event. Of even greater importance is the fact that no one testified that this event *was* a company function, or that they *thought* that it was a company function. The other tenuous connections of the company to the event are not sufficient to warrant the finding that the outing was a company event. To find otherwise would mean that any business or organization which complied with a solicitation for door prizes or favors would be potentially liable if one or more of their employees was involved in the event in question. Certainly justice would require more of a nexus than that.

We, therefore, reverse the judgment of the trial court are remand for entry of judgment as follows:

(1) On July 20, 1986 Rick Hamilton was not an insured under and pursuant to Nationwide Mutual Insurance policy 85 BA 957-111-0001 issued to BMI Acquisition Corporation for the period of April 1, 1986 thru April 1, 1987; while driving an otherwise insured vehicle; to-wit: a Chevrolet Chevette, with license plate #017AGH;
(2) Nationwide Mutual Insurance Co., pursuant to its policy aforesaid is not obligated to provide liability coverage and the defense indemnification to Rick Hamilton arising out of the July 20, 1986 collision involving the foregoing vehicle and Noreen K. Jones;
(3) Rick Hamilton was not acting within the course and scope of his employment at the time of the accident referred to in the complaint;
(4) Nationwide Mutual Insurance Company is not obligated to provide coverage or pay any monies to Noreen K. Jones for any claim or law suit arising out of the accident referred to in the complaint under the

above policy;

(5) Costs shall be paid by appellees, Noreen K. Jones, Rick Hamilton and Metlife Health Care Network.

For the reasons stated in this opinion the judgment of the trial court is reversed and remanded for further proceedings.

MAHONEY, J., FORD, J., Concur